**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-01121-001-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Vivian A. Earle, | |
| Defendant. | |

Pending before the Court is Defendant Vivian A. Earle's Motion to Sever (Doc. 45) and Motion to Suppress (Doc. 46). On March 19, 2021, the Court held an evidentiary hearing on the motions. For the following reasons, both motions are denied.

## BACKGROUND

This case arises from five bank robberies that took place in Phoenix, Arizona between the dates of April 16 and August 23, 2019.  On August 23, 2019, following the robbery of a Bank of America, police stopped Defendant in his rental car.  Inside the rental car, police found a large amount of currency, a handgun, a ski mask, a spray bottle, and a latex mask.  Later that day, FBI questioned Defendant about his alleged involvement in the five bank robberies.  On September 18, 2019, a grand jury charged Defendant with five counts of bank robbery in violation of 18 U.S.C. § 2113(a).

/ / /

**DISCUSSION**

**I.    Motion to Suppress**

Defendant alleges his confession should be suppressed because his *Miranda* rights were violated, his confession was involuntary, and he was denied his Sixth Amendment right to counsel.

**a.  Invocation and Waiver of the Fifth Amendment Right to Counsel**

Invoking the Fifth Amendment right to counsel articulated by *Miranda* "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis v. United States*, 512 U.S. 452, 459, (1994). "If a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." *Id.* In *Davis*, for example, the court found the statement "maybe I should talk to a lawyer" ambiguous, and insufficient to invoke the right to counsel. *Id.* The Ninth Circuit has found similar equivocations insufficient to invoke the right. *See Sechrest v. Ignacio*, 549 F.3d 789, 807 (9th Cir. 2008) (finding a statement ambiguous where the defendant stated he had spoken with his attorney and had been advised to "keep his mouth shut."); *United States v. Younger*, 398 F.3d 1179, 1187 (9th Cir. 2005) (finding the question, "[b]ut, excuse me, if I am right, I can have a lawyer present through all this, right?," ambiguous); *Paulino v. Castro*, 371 F.3d 1083, 1087 (9th Cir. 2004) (finding failure to confirm the waiver of right to counsel in writing, together with queries, "Where's the attorney?" and "You mean it's gonna take him long to come?," ambiguous); *United States v. Doe*, 60 F.3d 544, 546 (9th Cir. 1995) (finding a statement to the effect that "maybe he ought to see an attorney" ambiguous); *Williams v. Horel*, 341 F. App'x 333, 335 (9th Cir. 2009) (finding the statement "I think first, um, I should have a lawyer" ambiguous and equivocal).

In *Davis*, the Supreme Court also explicitly "decline[d] to adopt a rule requiring officers to ask clarifying questions," holding that where a "suspect's statement is not an

unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."  512 U.S. at 461–62.  The Ninth Circuit has clarified that "the 'clear statement' rule of *Davis* addresses only the scope of invocations of *Miranda* rights in a post-waiver context." *United States v. Rodriguez*, 518 F.3d 1072, 1078–79 (9th Cir. 2008). Thus, after a valid waiver, "[i]f the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Id.*; *see also Sechrest v. Ignacio*, 549 F.3d 789, 806–07 (9th Cir. 2008) ("Where a suspect makes a reference to an attorney that is ambiguous or equivocal, the officers may continue with their questioning.").

Here, Defendant did not invoke his Fifth Amendment right to counsel.  After Agent Lee read Defendant his rights, their exchange unfolded as follows:

> **S.A. Lee:** Do you understand?
>
> **Vivian Earle:** Uh-huh.
>
> **S.A. Lee:** Do you want to talk to me?
>
> **Vivian Earle:** Yeah. But, um does it matter – does it – is it beneficial to have a lawyer present?
>
> **S.A. Lee:** Say again. I can't answer that for you. That's a decision you have to make man.
>
> **Vivian Earle:** Yeah.

(Doc. 50-1 at 7.)

Defendant's affirmative answers when asked if he understood his rights and whether he was willing to speak with Agent Lee constituted an explicit waiver of his Miranda rights. His subsequent question about the benefit of counsel was ambiguous and did not invoke the right to an attorney. *See Younger*, 398 F.3d at 1187.  Agent Lee had no obligation to clarify or stop asking questions because of this mention of an attorney, given Defendant had already made an affirmative waiver of his rights.

Agent Lee's variance from the instruction card reciting Defendant's *Miranda* rights did not render the waiver ineffective. The card reads: "Before I ask you any questions, you

must understand your rights." Agent Lee stated: "Before I ask you any questions I gotta read you your rights." Although Defendant made much of this deviation from the standard notice, the Court is aware of no authority requiring the former language to effectively inform a defendant of their *Miranda* rights. In fact, the Ninth Circuit has affirmed that "Supreme Court case law does not require a verbatim recitation of Miranda's warnings." *United States v. Loucious*, 847 F.3d 1146, 1151 (9th Cir. 2017). As Agent Lee's instructions conveyed essentially the same message as the introduction on his *Miranda* script, the warning effectively advised Defendant of his rights. *See id.* Moreover, after reading the Defendant his rights, Agent Lee confirmed that he understood his right to counsel.

Nor did Agent Lee's refusal to advise Defendant to seek counsel affect this waiver. The Ninth Circuit has affirmed that an officer may constitutionally decline to advise a suspect when asked for an opinion regarding counsel. *United States v. Palacio-Sanchez*, 106 F.3d 410 (9th Cir. 1997) (finding an officer's refusal to respond to the question "do you believe that I need [] an attorney?" appropriate). Thus, although Defendant asserts that by offering to answer questions, Detective Lee was obligated to advise him that he needed counsel, the Constitution contains no such requirement.

### b. Knowing, Voluntary, and Intelligent Waiver

To be valid, a "waiver of *Miranda* rights must have been knowing, intelligent, and voluntary, based on the 'totality of the circumstances.'" *Maldonado v. Subia*, 534 F. App'x 671, 673 (9th Cir. 2013) (quoting *Edwards v. Arizona*, 451 U.S. 477, 486 n.9 (1981)). "The waiver inquiry has two distinct dimensions: waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 560 U.S. 370, 382–83 (2010) (internal quotations omitted).  A waiver can be an explicit, via oral or written statement, or implied, via an uncoerced statement from the accused after receiving and understanding a statement of their *Miranda* rights.  *Id.* at 383–84.

The totality of the circumstances indicate that Defendant's confession was knowing, voluntary, and intelligent. As explained above, Defendant made an explicit waiver of his rights when he responded affirmatively that he wished to speak to Agent Lee after hearing his *Miranda* rights. Defendant does not allege, and the transcripts do not indicate, any circumstance which would prevent or hinder Defendant from understanding those rights. Defendant alleges his subsequent question about the use of his statement indicates a lack of understanding:

> **Vivian Earle:** So – so what I'm saying now, is this going to, like, go against me or – or what?
>
> **S.A. Lee:** I mean, we've already got a case against you. All right? We've got everything. We've got photos. We got videos. We got planes tracking your car. All right? So all I got to say is, we've got a solid case against you.
>
> **Vivian Earle:** Uh-huh.
>
> **S.A. Lee:** It's just your cooperation. All right? And that's up to you. Like I said --
>
> **Vivian Earle:** (Indiscernible).
>
> **S.A. Lee:** -- you can talk to me if you want. You don't have to talk to me if you don't want to, but that's completely up to you. All right?
>
> **Vivian Earle:** Yeah.

(Doc. 50-1 at 25.)

In response to the question, however, Agent Lee explained that the Defendant was not required to speak with him. Further, questions alone do not establish an unknowing waiver. *See Whitney v. Middleton*, No. 98CV2010 BTM (RBB), 2002 WL 35645226, at *9 (S.D. Cal. Jan. 18, 2002) (finding question after affirmative answer, "I should ask for a lawyer though, huh?," did not demonstrate an unknowing, involuntary, and unintelligent waiver, but demonstrated that the defendant understood a feature of her rights); *United States v. Pham*, 815 F. Supp. 1325, 1330 (N.D. Cal. 1993) (finding a knowing and voluntary waiver when at first the defendant indicated he didn't understand and the interrogator re-explained the rights). In fact, the exchange indicates Defendant again

confirmed his understanding that evidence could be used against him. Defendant points to no other evidence or caselaw which would render his confession unknowing. Rather, his initial waiver strongly supports the conclusion that the subsequent confession was voluntary. *Missouri v. Seibert*, 542 U.S. 600, 608–09 (2004) ("[G]iving the warnings and getting a waiver has generally produced a virtual ticket of admissibility."); *DeWeaver v. Runnels*, 556 F.3d 995, 1002–03 (9th Cir. 2009) ("[I]f interrogators obtained a confession after *Miranda* warnings and a valid waiver, the confession was likely voluntary."). Defendant's clear waiver of his *Miranda* rights and the lack of any other facts indicating lack of understanding therefore render his waiver knowing, voluntary, and intelligent.[1]

### c. Sixth Amendment Right to Counsel

"[T]he right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 194 (2008). "By its very terms, it becomes applicable only when the government's role shifts from investigation to accusation." *Moran v. Burbine*, 475 U.S. 412, 430 (1986). Defendant was indicted on September 18, 2019, several days after the interview on August 23, 2019. His Sixth Amendment right to counsel had therefore not attached at the time of questioning.

### d. Defendant's Alleged Invocation Prior to Recording

Defendant also argues that his statement should be suppressed because he invoked his right to counsel before questioning. After he was arrested, Defendant was placed in the custody of Officer Blake Hammond, who brought him to the police station for a formal

---

[1] Defendant also alleges that Agent Lee's representations about the evidence against him rendered his confession involuntary. It is well established, however, that "[t]rickery, deceit, even impersonation do not render a confession inadmissible." *United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004). Misrepresenting or exaggerating the amount of evidence against a defendant also does not rise to the level of a constitutional violation. *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (refusing to find a confession involuntary where the police lied about the defendant being identified as the perpetrator by a witness); *Amaya–Ruiz v. Stewart*, 121 F.3d 486, 495 (9th Cir. 1997) ("Misrepresentations linking a suspect to a crime or statements which inflate the extent of evidence against a suspect do not necessarily render a confession involuntary."), *overruled on other grounds by United States v. Preston*, 751 F.3d 1008, 1020 (9th Cir. 2014).

interview.  Defendant asserts that during this period prior to his interview with Agent Lee, he informed Officer Hammond and others present that he invoked both his right to remain silent and to an attorney.  Officer Hammond wore a body camera and a microphone during the encounter. In an initial response to biographical information when he was taken into custody, Defendant did initially express unwillingness to speak with the officers, stating "Sir, I'm not answering no questions, Sir."  The transcript, however, contains no other indications that Defendant invoked his rights. Rather, Defendant repeatedly expressed that he was willing to speak to an investigator, stating "I'm going to speak to the detective ever – whoever I'm supposed to speak to," and "Where's the lead detective?"

The microphone, however, did not pick up all of Defendant's statements, and Defendant asserts that several of the "unintelligible" notations on the transcript represent portions of the conversation where he invoked his rights.  He particularly emphasized the following exchange:

**Officer Hammond:** Are you from Phoenix here?

**Vivian Earle**: (Inaudible.)

**Officer Hammond:** No? How Long you been in Phoenix?

**Vivian Earle:** (Inaudible.)

**Officer Hammond:** Oh, okay. Sorry. I get it. I'm that dude, I like talk to the Uber drivers and stuff when I'm going out. I get it you don't want to talk. I'm sorry. I shouldn't have asked you any questions. I wasn't trying to ask you any questions like that. I was just trying to say, hey, you know, and just have a conversation, you know, but I get it. We're not there yet.

Officer Hammond testified that his questions were directed only at monitoring Defendant's welfare, and that he recalls no instance where Defendant invoked his rights while in his custody.  Defendant's assertion that he clearly invoked his rights is also at odds with his simultaneous requests to speak to the "lead detective" and his willingness to speak with Agent Lee upon entering the recorded interview room.  The Court thus finds that Officer Hammond's testimony is credible and establishes that Defendant never invoked his

1    rights to counsel or silence. Defendant's statements are therefore admissible.

2    **II.    Motion to Sever**

3        **A.  Rule 8(a)**

4            Rule 8(a) is "broadly construed in favor of initial joinder." *United States v. Jawara*,

5    474 F.3d 565, 573 (9th Cir. 2007) (quoting *United States v. Friedman*, 445 F.2d 1076, 1082

6    (9th Cir. 1971)).  Joinder of charges against a defendant is proper "if the offenses charged—

7    whether felonies or misdemeanors or both—are of the same or similar character, or are

8    based on the same act or transaction, or are connected with or constitute parts of a common

9    scheme or plan." Fed. R. Crim. P. 8(a).  A court looks only to the indictment to determine

10   if joinder is proper.  *See Jawara*, 474 F.3d at 573 ("[T]he established rule in this circuit is

11   that a valid basis for joinder should be discernible from the face of the indictment."). In

12   determining whether offenses are of "the same or similar character," the Ninth Circuit

13   employs a "holistic approach." *Id.* at 576.  This approach involves considering a list of

14   factors to determine whether the indictment satisfies this prong, "such as the elements of

15   the statutory offenses, the temporal proximity of the acts, the likelihood and extent of

16   evidentiary overlap, the physical location of the acts, the modus operandi of the crimes,

17   and the identity of the victims." *Id.* at 578.

18           In the indictment, Count One alleges that on April 16, 2019, Defendant committed

19   bank robbery at the Wells Fargo Bank on 12641 North Tatum Boulevard in Phoenix.  Count

20   Two alleges Defendant committed bank robbery on June 12, 2019 at the Wells Fargo Bank

21   on 13015 North Tatum Boulevard in Phoenix.  Count Three alleges Defendant committed

22   bank robbery on July 12, 2019 at the Chase Bank on 15415 North 65th Place in Phoenix.

23   Count Four alleges Defendant committed bank robbery on August 7, 2019 at the Wells

24   Fargo Bank on 3102 East Camelback Road in Phoenix.  Finally, Count Five alleges

25   Defendant committed bank robbery on August 23, 2019 at the Bank of America on 3178

26   East Camelback Road in Phoenix.  All five counts allege Defendant committed the bank

27   robberies with force, violence, and intimidation.  (Doc. 7.)

28           The indictment supports Rule 8 joinder.  The elements of the statutory offenses are

the same for all five counts.  All five counts took place within close geographic proximity in Phoenix and over the span of only four months.  In addition, all five counts involve the use of force, violence, and intimidation.  The Ninth Circuit has upheld joinder under similar circumstances.  *See, e.g.*, *United States v. Drummondo-Farias*, 622 Fed. Appx. 616, 617 (9th Cir. 2015) (upholding joinder of a count charging the defendant with conspiracy to distribute methamphetamine in Hawaii beginning at an unknown date and ending in January of 2012 and a count charging the defendant with distributing methamphetamine in Hawaii in December of 2010).  Accordingly, these charges are properly joined under Rule 8(a).[2]

### a.  Rule 14

Rule 14 provides relief for defendants where the joinder of offenses "appears to prejudice a defendant or the government."  Fed. R. Crim. P. 14(a).  Courts have wide discretion in determining whether relief is necessary under Rule 14, and also possess wide discretion in determining the form the relief should take.  *See Zafiro v. United States*, 506 U.S. 534, 538–39 (1993) ("Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.").  In such an instance, "the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).

Severance is only required where joinder is "so manifestly prejudicial that it outweigh[es] the dominant concern with judicial economy and compel[s] the exercise of the court's discretion to sever."  *United States v. Lopez*, 477 F.3d 1110, 1116–17 (9th Cir. 2007) (internal citation and quotation omitted).  If the evidence would be admissible regardless of severance, joinder of the offenses does not create sufficient prejudice to warrant severance.  *See United States v. Johnson*, 820 F.2d 1065, 1070–71 (9th Cir. 1987).

---

[2]  The Government also argues that joinder is permitted because the counts are part of a common scheme.  As the Court finds that the counts can be joined under the "same or similar character" test, the Court need not address whether the events are part of a common scheme or plan.

Even if evidence is not cross-admissible, severance is not necessary where the jury is "not likely . . . to confuse which count particular evidence [is] introduced to establish." *Id.* at 1071; *see also United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994) ("In assessing whether joinder was prejudicial, of foremost importance is whether the evidence as it relates to the individual defendants is easily compartmentalized."). Prejudice is more likely where the counts joined together are "similar in nature." *Johnson*, 820 F.2d at 1071. However, prejudice may be mitigated through the use of proper jury instructions. *See id.* (upholding a district court's decision not to sever counts where the court instructed the jury that "[e]ach count charges a separate crime. You must decide separately what the evidence in the case shows about the crime"). Prejudice is also lessened where the joined charges are wholly separate incidents, and thus permit the jury to separate the charges from each other. *See Vasquez-Velasco*, 15 F.3d at 846 (finding that even where the crimes committed were similar in nature, their joinder was not prejudicial because each charge occurred a week from the other, and "[a]s such, they were discrete acts that a jury could compartmentalize reasonably easily").

Regardless of whether evidence of the robberies is cross-admissible, joinder is not so prejudicial as to warrant severance. As each robbery was a discrete act that took place about a month apart from the others, the charges are distinct enough that a jury can compartmentalize them. The Court can give the jury limiting instructions to emphasize that each count charges a separate crime and that there needs to be sufficient evidence to prove each crime. Judicial economy also counsels against severance because separating the charges will result in a "duplicative presentation of evidence." *Lopez*, 477 F.3d at 1117. Defendant's rental car history, the items found in Defendant's rental car, the close geographic locations of the robberies, and Defendant's statement to police are relevant to all five of the charges. (Doc. 48 at 10–11.) Accordingly, Defendant's Motion to Sever is denied.

## CONCLUSION

For the following reasons, Defendant's statements are admissible and Defendant's

Motion to Sever is denied.

**IT IS HEREBY ORDERED** that Defendant Vivian A. Earle's Motion to Sever (Doc. 45) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress (Doc. 46) is **DENIED**.

Dated this 25th day of March, 2021.

G. Murray Snow
Chief United States District Judge