**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-01121-001-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Vivian A. Earle, | |
| Defendant. | |

Pending before the Court is Vivian Earle's ("Defendant") Motion for Reconsideration of Denial of Motion to Suppress Statements (Doc. 171.)  For the reasons below, the Motion is denied.

## BACKGROUND

Defendant was arrested on August 23, 2019 and later indicted on five counts of bank robbery. (Doc. 7.)  Almost immediately after Defendant was arrested, he stated that he did not want to answer any questions.  Police then conducted a search of his car and his person before transporting him to a nearby parking lot for a witness identification.  Defendant was later taken to the police station.

At various points after his arrest, Defendant had several verbal exchanges with the arresting officer, Officer Hammond.  These conversations occurred after Defendant had been arrested and during his transport to the parking lot and to the police station.  Defendant alleges that these exchanges violated his Fifth Amendment right to remain silent because

of his prior invocation.  Defendant points to the following dialogue as evidence that Officer

Hammond violated Defendant's rights:

> VIVIAN EARLE: Sir, I'm not answering no questions, sir.
> OFFICER 1: Okay. Are we on the same page? I'm not asking you about any crime you committed, but are you – is your name Vivian Earle?
> VIVIAN EARLE: Can you loosen this up a little bit?
> OFFICER 1: Okay.
> BODYCAM OFFICER: We're going to do that in a little bit. Let me -- let me get the AC on.
> VIVIAN EARLE: You guys -- you guys don't understand what's going on there.
> . . .
> BODYCAM OFFICER: And we do understand what's going on, so --
> VIVIAN EARLE: No, sir. You don't.
> BODYCAM OFFICER: Okay. So you're going to tell me, right?
> VIVIAN EARLE: Yes. (Inaudible.)
> BODYCAM OFFICER: But a minute ago you said you weren't going to talk.
> VIVIAN EARLE: No, not to – I'm going to speak to the detective ever – whoever I'm supposed to speak to.
> . . .
> BODYCAM OFFICER: Are you from Phoenix here?
> VIVIAN EARLE: (Inaudible.)
> BODYCAM OFFICER: No? How long you been in Phoenix?
> VIVIAN EARLE: (Inaudible.)

(Doc. 171-2 at 4–5, 41.)

Despite Defendant's indication that he wished to remain silent, Defendant made

repeated representations that he wished to speak to the "lead detective."  (Doc. 171-2 at 6,

22, 40, 43.)    After Officer Hammond transported Defendant to the Phoenix Police

Department Headquarters, Defendant was interviewed by FBI Agent Lee.  Prior to this

interview, Defendant was read his *Miranda* rights for the first time since he had been

arrested.

Defendant contested the admissibility of Agent Lee's interrogation in a prior Motion

to Suppress.  (Doc. 46.)  There, Defendant focused on whether he had invoked his right to

counsel during the interrogation.  Because the issue of the right to remain silent was not

squarely presented to the Court, the Court focused its analysis on Defendant's attempts to

invoke his right to counsel during the interrogation and whether he waived his rights during that interview.  The Court did, however, briefly address Defendant's statement that "Sir, I'm not answering no questions, sir."  Because "[t]he transcript . . . contain[ed] no other indications that Defendant invoked his rights," the Court did not find this statement sufficient for Defendant to have invoked his right to remain silent.  (Doc. 87 at 7–8.) Defendant now challenges this ruling.

## DISCUSSION

Despite the Court having decided Defendant's Fifth Amendment claim in March 2021, Defendant now seeks reconsideration of that order nearly a year later.  Defendant now asserts that this Court should suppress his statements made to law enforcement pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), because he invoked his right to remain silent immediately after he was arrested.  Defendant asserts that this invocation was not "scrupulously honored" as required by *Miranda* and its progeny, *Michigan v. Mosley*, 423 U.S. 96 (1975).  The primary issue is whether, if Defendant did invoke his right to remain silent, that invocation was scrupulously honored.

## I.  Reconsideration

Although the Federal Rules of Criminal Procedure do not expressly authorize the filing of motions for reconsideration, courts, including the Ninth Circuit, have held that motions for reconsideration may be filed in criminal cases.  *See United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000) ("As the Second Circuit noted . . . post-judgment motions for reconsideration may be filed in criminal cases."); *United States v. Mendez*, No. CR-07-00011-MMM, 2008 WL 2561962, at *1 (C.D. Cal. June 25, 2008) (ruling on a motion seeking reconsideration of an order denying a defendant's request that the government be directed to provide a list of its potential witnesses at trial).

"[M]otions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings."  *Mendez*, 2008 WL 2561962, at *2; *see, e.g.*, *United States v. Sam*, No. CR-13-08020-002-PCT-DLR, 2020 WL 4607244, at *1 (D. Ariz. Aug. 10, 2020); *United States v. Krug*, No. CR 09-01148-MMM, 2012 WL

12973474, at *1 (C.D. Cal. Oct. 24, 2012). "The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1); *see also Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (noting that motions to reconsider are appropriate only if the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law"); *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003) (holding that a motion for reconsideration is appropriate only when there is newly discovered fact or law, newly occurring facts, a material change in the law, or upon a convincing showing that the Court failed to consider material facts that were presented before the initial decision). A motion for reconsideration is an inappropriate vehicle to ask the Court to "rethink what the court ha[s] already thought through—rightly or wrongly." *See United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). "Arguments that a court was in error on the issues it considered should be directed to the court of appeals." *Defs. of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995) (quoting *Refrigeration Sales Co., Inc. v. Mitchell-Jackson, Inc.*, 605 F. Supp. 6, 7 (N.D. Ill. 1983)).

Defendant filed this motion nearly a year after the Court issued its original order. (Doc. 87.) "Absent good cause shown, any motion for reconsideration shall be filed no later than fourteen (14) days after the date of the filing of the Order that is the subject of the motion." LRCiv 7.2(g)(2). Defendant has not cited this standard, nor has he attempted to meet it. Regardless, even if Defendant *could* establish good cause—and he has not—the Court would still not disturb its prior order. Defendant's Fifth Amendment rights were not violated.

## II. *Miranda*

Defendant argues that his Fifth Amendment rights were violated when police

interrogated him after he invoked his right to remain silent.  (Doc. 171.)  No one "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  In order to protect this right, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  *Miranda*, 384 U.S. at 444.  "Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Id.*  *Miranda*'s procedural safeguards ordinarily take the form of warnings given by law enforcement officers prior to a custodial interrogation: that a suspect may remain silent, that anything he says will be used against him in court, that he is entitled to an attorney, and that an attorney will be provided by the state should he not be able to afford one.

Once a suspect has invoked his right to remain silent, "all questioning must cease." *Anderson v. Terhune*, 516 F.3d 781, 784 (9th Cir. 2008) (en banc).  Police must "scrupulously honor[]" that right.  *Miranda*, 384 U.S. at 479.  But unlike the right to counsel, *see Edwards v. Arizona*, 451 U.S. 477 (1981), invocation of the right to remain silent does not operate as a total bar on subsequent police questioning.  In *Mosley*, 423 U.S. 96, the Supreme Court recognized both that police questioning following a suspect's invocation of his right to remain silent is especially suspect, and also that *Miranda* permits suspects to make voluntary, intelligent, and knowing waivers.  *Id.* at 102–04.  It therefore eschewed a per se rule forbidding all reinitiation of questioning post-invocation of the right to remain silent for a case-by-case approach.  In *Mosley*, the Court looked at the amount of time that elapsed after the invocation, the provision of fresh warnings, and the scope and subject matter of the second interrogation.  *Id.* at 104–06.  As with all case-by-case inquiries, no factor is dispositive, and the factors cited in *Mosley* are not exhaustive.  *United States v. Hsu*, 852 F.2d 407, 410 (9th Cir. 1988).  "[N]either the amount of elapsed time nor the identity of subject matter are of primary importance."  *Id.*  Instead, the Court is "most concerned about 'the provision of a fresh set of warnings.'"  *Id.* (quoting *United*

1   *States v. Heldt*, 745 F.2d 1275, 1278 n. 5 (9th Cir. 1984)).

2   **A.  Whether Interrogation Ceased**

3      Even if Defendant validly invoked his right to remain silent by stating, "Sir, I'm not

4   answering no questions, sir," that invocation was scrupulously honored.[1]  (Doc. 171-2 at

5   4.)  No interrogation occurred until after Defendant received *Miranda* warnings and had

6   indicated his desire to speak with the lead detective, and no other *Mosley* factor outweighs

7   that finding.  "*Miranda* . . . only appl[ies] to interrogations, which consist of 'any words or

8   actions on the part of the police (other than those normally attendant to arrest and custody)

9   that the police should know are reasonably likely to elicit an incriminating response from

10  the suspect.'"  *Mickey v. Ayers*, 606 F.3d 1223, 1235 (9th Cir. 2010) (quoting *Rhode Island

11  v. Innis*, 446 U.S. 291, 301 (1980)).  "Casual conversation is generally not the type of

12  behavior that police should know is reasonably likely to elicit an incriminating response."

13  *Id.*; *see United States v. Young*, No. 2:13-cr-00149-KJD-CWH, 2014 WL 11380772, at *3,

14  11 (D. Nev. Jan. 17, 2014).

15     After Defendant invoked, an officer asked if his name was "Vivian Earle."  (Doc.

16  171-2 at 4.)  Defendant does not contest that this was a permissible question.  (Doc. 171 at

17  13 n.4.)  Defendant later stated, "You guys – you guys don't understand what's going on

18  there," to which Officer Hammond responded, "And we do understand what's going on,

19  so."  (Doc. 171-2 at 4–5.)  This is not interrogation because it is not reasonably likely to

20  elicit an incriminating response.  Even statements that directly relate to the subject matter

21  _____

22  [1] The Court notes that Defendant had not yet been interrogated when he invoked his right
    to remain silent.  The Supreme Court and the Ninth Circuit have been hesitant to give effect
23  to so-called "anticipatory invocations" that occur outside the context of custodial
    interrogation.  *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991); *United States v. Wright*,
24  962 F.2d 953, 955 (9th Cir. 1992); *see also United States v. Rambo*, 365 F.3d 906, 909
    (10th Cir. 2004) ("For the protections of *Miranda* to apply, custodial interrogation must be
25  imminent or presently occurring."); *United States v. LaGrone*, 43 F.3d 332, 339 (7th Cir.
    1994) ("[I]in order for a defendant to invoke his Miranda rights[,] the authorities must be
26  conducting interrogation, or interrogation must be imminent."); *United States v. Grimes*,
    142 F.3d 1342, 1348 (11th Cir. 1998) ("*Miranda* rights may be invoked only during
27  custodial interrogation or when interrogation is imminent."); *United States v. Hinkson*, No.
    CR-04-127-S-RCT, 2004 WL 7333646, at *7–9 (D. Idaho Dec. 22, 2004).  Because this
28  issue was not briefed, the Court will presume that Defendant's invocation was valid.  Even
    with this presumption—which would be contrary to the Court's prior order—Defendant's
    suppression claim still fails.

of the case against an arrestee do not necessarily amount to the functional equivalent of interrogation. *See United States v. Moreno-Flores*, 33 F.3d 1164, 1169 (9th Cir. 1994) (holding that officer's statement that "agents had seized approximately 600 pounds of cocaine and that [defendant] was in serious trouble" did not amount to interrogation); *Shedelbower v. Estelle*, 885 F.2d 570, 572–73 (9th Cir. 1989) (holding that officer's statement that accomplice was in custody, and victim had identified [defendant's] picture was not interrogation); *Innis*, 446 U.S. at 294–95, 302–03 (holding that officers' statements about handicapped children finding a weapon the defendant was suspected of hiding was not interrogation). Here, Officer Hammond was merely responding to Defendant's own comment, and Officer Hammond's comment was cut off by Defendant. (Doc. 171-2 at 5.) No interrogation occurred.

The next exchange between Defendant and Officer Hammond was also not interrogation:

> BODYCAM OFFICER: And we do understand what's going on, so --
> VIVIAN EARLE: No, sir. You don't.
> BODYCAM OFFICER: Okay. So you're going to tell me, right?
> VIVIAN EARLE: Yes. (Inaudible.)
> BODYCAM OFFICER: But a minute ago you said you weren't going to talk.
> VIVIAN EARLE: No, not to – I'm going to speak to the detective ever -- whoever I'm supposed to speak to.
> BODYCAM OFFICER: Okay.

(Doc. 171-2 at 5.)

Officer Hammond's questions can fairly be construed as seeking clarification as to whether Defendant was trying to waive his right to remain silent. Although subsequent statements will not make a prior invocation ambiguous, they are relevant to "whether the accused waived the right he had invoked." *Smith v. Illinois*, 469 U.S. 91, 98, 100 (1984). "[W]aivers can be established [by] formal or express statements of waiver," but also can be "implied from all the circumstances." *Berghuis v. Thompkins*, 560 U.S. 370, 383–84 (2010). Such questioning, in these circumstances, does not constitute interrogation.[2]

---

[2] The Court emphasizes that it does not treat Defendant's later statements as an invalidation of the original invocation, which would be improper. *Anderson*, 516 F.3d 781; *Jones v.*

Officer Hammond was not trying to "elicit an incriminating response" but rather was reminding Defendant that he had previously stated he did not want to talk. This is especially so given that it was Defendant—not Officer Hammond—who initiated the conversation that led to this exchange. *Cf. Hendricks v. Vasquez*, 974 F.2d 1099, 1105 (9th Cir. 1992) ("[I]nterrogators may recommence questioning if the suspect initiates the conversation."); *United States v. Carpenter*, 772 F. App'x 419, 422 (9th Cir. 2019); *United States v. Sullivan*, No. CR18-5273 BHS, 2020 WL 6392797, at *5 (W.D. Wash. Nov. 2, 2020); *Diaz v. Soto*, No. ED CV 15-2355-SVW (SP), 2018 WL 7200657, at *6 (C.D. Cal. Oct. 25, 2018); *United States v. Campbell*, 805 F. Supp. 1379, 1389 (W.D. Tex. 1992).

Finally, Officer Hammond asked Defendant about whether he was from Phoenix and how long he had resided there. (Doc. 171-2 at 41.) Officer Hammond testified that he had this conversation because it can get hot in the back of a police car during summertime, and "when we have a conversation with an individual in the back of our car, it becomes kind of an easy way to kind of keep tabs on him to make sure they are still breathing, to make sure they are still conscious." (Doc. 88 at 16–17.) The Court finds this testimony credible because Defendant was arrested in the throes of the summer heat—August—and had already made several statements about being too hot. (Doc. 171-2 at 19–20, 22, 26.) Moreover, this type of question is not "reasonably likely to elicit an incriminating

---

*Harrington*, 829 F.3d 1128 (9th Cir. 2016). This is not a case in which an officer pretends not to understand a suspect's invocation, nor is it a case in which the officer uses clarifying questions to elicit an incriminating response. *Anderson*, 516 F.3d 781; *Jones*, 829 F.3d 1128; *United States v. Pere-Quiroz*, No. 2:16–cr–93–GMN–VCF, 2016 WL 4435714 (D. Nev. July 21, 2016). Notably, even though Defendant answered "Yes" to Officer Hammond's first question about whether he would speak, Officer Hammond did not begin an interrogation but reminded Defendant that Defendant had invoked. (Doc. 171-2 at 5.) Officer Hammond then ceased questioning when Defendant reaffirmed that he was not going to speak to Officer Hammond, but rather "the detective." (Doc. 171-2 at 5.) Most crucially, however, Defendant's willingness to speak *was not* impacted by Officer Hammond's questions; Defendant initiated the conversation, Officer Hammond ceased questioning after Defendant clarified his position, and Defendant continued to reiterate—without provocation—that he wanted to speak with the lead detective. Unlike those cases in which clarifying questions are used as pretext to circumvent Fifth Amendment rights, Defendant was not subject to *any* interrogation until he arrived at police headquarters and received official *Miranda* warnings. The Court thus does not deny the Motion because Defendant's invocation was made ambiguous by subsequent statements—an erroneous legal conclusion—but because the *Mosley* factors demonstrate that the subsequent interrogation was proper.

response." Officer Hammond was merely engaging in casual conversation to ensure that Defendant remained alert and conscious. *Young*, 2014 WL 11380772, at *3, 11 (holding that officer's statement that "we all make choices that we have to live with" after asking about defendant's children was not "reasonably likely to elicit an incriminating response"); *United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1981) (holding that "custodial questioning constitutes interrogation whenever, under all the circumstances involved in a given case, the questions are 'reasonably likely to elicit an incriminating response from the suspect'" (quoting *Innis*, 446 U.S. at 301)); *see also United States v. Foster*, 227 F.3d 1096, 1102–03 (9th Cir. 2000).

Thus, Defendant's Fifth Amendment rights were not violated at any time during his ride to the police department with Officer Hammond. Although Defendant may have been in custody, he was not subjected to interrogation, as defined by the Supreme Court and the Ninth Circuit. After Defendant arrived at the police department, Defendant was subjected to custodial interrogation when he was questioned by Agent Lee. The remaining issue is, therefore, whether this interrogation was proper under the *Mosley* factors.

### B.  The *Mosley* Factors

The *Mosley* factors—the amount of time that elapsed after the invocation, the provision of fresh warnings, and the scope of the second interrogation—weigh in the Government's favor. Although the Court does not know exactly how much time elapsed between Defendant's invocation and subsequent interrogation, the Court presumes it to be a significant amount of time. Defendant was arrested at "the intersection of the I-17 freeway and Cactus, just south." (Doc. 88 at 6.) Defendant invoked immediately and before leaving the initial arrest scene. (Doc. 171-2 at 4–5.) Officer Hammond drove Defendant in his police car from the arrest scene to Phoenix Police Headquarters at 620 West Washington St. in Phoenix. (Doc. 88 at 17.) But there are several pages of dialogue before Defendant ever arrives at headquarters because Defendant was driven to a nearby parking lot at Cactus and Sand Lilly for a witness identification. (Doc. 171-2 at 4–40); (Doc. 171 at 8.) Moreover, Defendant was placed in an interrogation room while he waited

for the "lead detective," which also lengthened the amount of time elapsed.  Therefore, though the Court declines to approximate the exact length of time just from the transcript, it does note that the length of time was sufficient for Defendant to be transported to a different location twice, for police to conduct an initial search of both Defendant and his car, and for police to conduct a witness identification.  (Doc. 171-2 at 5, 16–20, 37–38); (Doc. 171 at 8.)  The Court does not find this to be insignificant, especially when the Ninth Circuit does not give much weight to this factor in the *Mosley* analysis.  *Hsu*, 852 F.2d at 410.

Moreover, Defendant was not subject to further interrogation until Defendant arrived at police headquarters.   And even then, Defendant had already inquired—unprompted—about speaking to the "lead detective" four times.  (Doc. 171-2 at 6–7, 22, 40, 43–44.)  Defendant reinitiated contact with police, received his *Miranda* warnings, and voluntarily waived his rights, as previously found by this Court.  (Doc. 87 at 3–8.)  Agent Lee did not attempt to force Defendant to continue with the interrogation and repeatedly reiterated that Defendant did not have to speak with him and could consult an attorney.[3]

---

[3] At no point did Agent Lee dissuade Defendant from invoking his rights:

> S.A. LEE: It's just your cooperation. All right? And that's up to you. Like I said --
> VIVIAN EARLE: (Indiscernible).
> S.A. LEE: -- you can talk to me if you want. You don't have to talk to me if you don't want to, but that's completely up to you. All right?
> . . .
> VIVIAN EARLE: I'm just trying to see, do I need an attorney?
> S.A. LEE: That's – that's up to you. All right? I asked you already. I asked you if you need an attorney or not. That's completely up to you. All right? So you got to let me know.
> VIVIAN EARLE: So you guys have attorneys here on site or what?
> S.A. LEE: We don't. But, like I said, you can stop talking right now too, and then you can talk to your attorney first if you want to. That's completely up to you. I cannot tell you -- you can't -- you can't ask me, hey, should I get an attorney? Because that's not my
> answer to tell you. Okay?
> VIVIAN EARLE: Yeah.
> S.A. LEE: So if you want to stop talking, that's fine.

Like *Hsu*, then, even though the interrogation occurred on the same day as Defendant's invocation and covered the same subject matter, because Defendant was provided a fresh set of warnings that he voluntarily and knowingly waived, he was not subject to coercion to waive his rights, and he had continually represented that he was willing to speak to the lead detective, his right to remain silent was "scrupulously honored."  At no point were Defendant's Fifth Amendment rights violated.

## CONCLUSION

Defendant's Motion is denied as untimely because he has failed to show good cause. Moreover, even assuming that Defendant invoked his right to remain silent by stating, "Sir, I'm not answering no questions, sir[,]" Defendant's interview with Agent Lee is not barred by *Mosley*.  Defendant was not interrogated until he received proper *Miranda* warnings, and by then, Defendant had made several, unprompted, requests to speak to the lead detective.

**IT IS HEREBY ORDERED** that Defendant's Motion for Reconsideration of Denial of Motion to Suppress Statements (Doc. 171) is **DENIED**.

Dated this 15th day of April, 2022.

*G. Murray Snow*

G. Murray Snow
Chief United States District Judge

---

VIVIAN EARLE: Yeah. I -- yeah, I think I should get -- get a attorney --
S.A. LEE: Okay. All right.
VIVIAN EARLE: -- just to advise me --
S.A. LEE: That's – that's perfectly fine.
. . .
All right? Perfectly fine, within your rights, to ask for an attorney. All right? So we're going to stop here. If you need anything, just raise your hand. They'll see you. They'll call me over. Okay?
(Doc. 50-1 at 26, 40–41.)