**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-01121-001-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Vivian A. Earle, | |
| Defendant. | |

Defendant Vivian A. Earle ("Defendant") has filed a "Motion to Recuse and Disqualify Judge" (Doc. 353) to which the Government has filed a Response (Doc. 362). This Court was assigned to review Defendant's Motion. (Doc. 354). On November 27, 2023, the Court held a hearing on Defendant's Motion and now issues its Order.

Facts[1] and Procedure

Defendant was indicted by a federal grand jury on 5 counts of Bank Robbery in violation of 18 U.S.C. § 2113(a), alleging five separate bank robberies at five different banks and spanning from April through August of 2019. (Doc. 7). In June 2023, Defendant proceeded to a jury trial and was found guilty of all charged counts. Defendant represented himself during the trial but was aided by court-appointed stand-by counsel. Before the trial and during the case proceedings, Defendant was appointed no less than five trial counsel but ultimately determined to represent himself at trial. Indeed, as early as 2021, he expressed his desire to do so. (Doc. 146 at 2-4).

---

[1] The facts are more fully set forth in the Governments Response (Doc. 362 at 1-5).

Defendant's sentencing hearing is pending the issuance of this Court's findings. In essence, Defendant asserts that the trial court judge must be recused from imposing sentence because he "has personal bias and prejudice against [him]." (Doc. 353 at 1). The Court disagrees.

Law and Analysis

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein" and "another judge shall be assigned to hear such [a] proceeding." 28 U.S.C. § 144. Remand to a new judge is reserved for "unusual circumstances." *United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir. 1979) (citing *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977)). The standard for recusal is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Mayes v. Leipziger*, 729 F2d 605, 607 (9th Cir. 1984) (quoting *Untied States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)). The affidavit "shall state the facts and the reasons for the belief that bias or prejudice exists[.]" 28 U.S.C.§ 144. An affidavit is not legally sufficient unless it specifically alleges facts that fairly support the contention that the judge exhibits bias or prejudice directed toward a party that stems from an extrajudicial source. *See United States v. Carignan*, 600 F2d 762 (9th Cir. 1979).

Here, Defendant's Motion asserts that the presiding trial judge, "has personal bias and prejudice against ["him"] . . . has a conflict of interest, and/or personal self-interest in this matter to such an extent that he would be unable to conduct a fair and impartial sentence." (Doc 353 at 1). Though Defendant's affidavit lacks the requisite sufficiency, the Court will nonetheless review it and its citations in making its findings and determination.

As best as can be gleaned from Defendant's Motion, he asserts four separate grounds as a basis for recusal: 1) the Judge's alleged disclosure to the government of attorney-client privileged communication between Defendant and stand-by counsel; 2) the

Judge's alleged constitutional violations related to his prior order of commitment; 3) the Judge's familiarity to Blake Hammond, a government witness, and 4) an allegation that the Judge was asleep during the trial. (*See* Doc. 353 at 3-8).

Defendant first asserts that in open court, and in front of the Government attorneys, the judge revealed privileged communications he made in confidence to his attorney. (Doc 353 at 3-4). In support thereof, he references Doc. 313-1,[2] page 27 lines 12 through 20 stating "[t]he judge revealed [Defendant's] theory of the case to the government. The Court: what about the tracking? On line 12. The Court: I know that there is an alternate theory that Mr. Earle has that maybe it went the other way. Line 18 through 20." (*Id*. at 4). On review of the transcript the Court notes that Defendant's counsel, in the first instance, raised the question of whether additional data from the tracking device exists. (*See* Doc. 313-1 at 26, 34). Yet, this Court cannot ascertain any developed record on the trial judge's understanding of the alternate theory or how he came to that understanding. Indeed, during the hearing, Defendant could offer no further understandable elucidation beyond his assertion.

The Government explains that Defendant's counsel interviewed witness Bellendier who had knowledge about a tracking device in bank robbery 5. (Doc. 362 at 6). The Government, as is usually the case, was present during that interview in which Defendant's counsel asked questions "focused on Earle's theory that the car went a different route than what the [tracking] results indicated." (*Id*). So, it is difficult for the Court to see how Defendant can claim the trial judge disclosed privileged communication to the Government when in trial preparation, his counsel asked questions of a witness, in Government counsel's presence, related to this asserted "privileged" communication. Having found no facts to support Defendant's claim, there is no reason to question the trial judge's impartiality on this ground.

Defendant next argues that the trial judge should not preside over his sentencing

---

[2] Doc. 313-1 is a transcript of a status hearing held regarding Defendant's competency determination, the Ninth Circuit's opinion related thereto, discussions on counsel representation, and the pending trial.

proceeding because he "violated [his] constitutional [sic] First Amendment right to access to the Court when he suppressed [his] appeal of his commitment order[.]" (Doc. 353 at 5). Defendant also claims his fifth, sixth and fourteenth amendment rights were violated because he was denied due process under 18 U.S.C. § 4247(d). (*Id.* at 5). Defendant further claims that "the judge . . . was more concern [sic] or preoccupied with his own self-interest than Earle's constitutional rights" because "the judge . . . knew he was going to be reversed by the Court of Appeals[.]" (*Id.*) The Court understands his claim as relating to the trial court's determination that he was not competent to proceed to trial and order restoring him to competency, and Earle's appeal of that Order.

The Court notes that indeed, Defendant appealed the trial court's Order finding him incompetent. (Doc. 241, Ex. 5 (Notice of Appeal)). Related thereto, Defendant also filed a Motion to Recuse the trial judge "asserting his belief that the judge . . . has a personal bias and prejudice against [him]." (Doc. 242). Defendant then filed a Notice of Appeal of the trial court's commitment Order arguing it was over his objection and against his will. (Docs. 252, 253). The trial judge appointed appellate counsel to represent him on appeal. (Doc. 257). The Ninth Circuit Court of Appeals issued a limited remand for the district court to consider if the record satisfies the timely appeal rule because it was filed outside of the permissible time. (Doc. 264 at 1 (citing Fed. R. App. P. 4(b)(4)). It noted that, because Defendant's treatment was completed while the appeal was pending, should the district court conduct a new competency hearing, the appeal may become moot. (*Id.* at 3). Finally, the appellate court noted that Defendant's request for reassignment of the district court "has not met the demanding standard for reassignment." (*Id.* (citing *United States v. Arnett*, 628 F.2d 1162, 1165-66 (9th Cir. 1979)). The district court held a hearing on June 1, 2023, in which it determined Defendant was competent to proceed to trial. (Doc. 275). On June 21, 2023, the appellate court dismissed Defendant's appeal as moot referencing "Appellee's unopposed motion to dismiss." (Doc. 292).

Though the appellate court noted the Government's concession that the trial court erred by not permitting Defendant to testify at the competency hearing, it ultimately

- 4 -

dismissed Earle's appeal as moot because he was ultimately found competent. (Docs. 275 at 2; 292 at 1). There is no indication in the appellate record or elsewhere that the trial court issued any order or made any finding to interfere with Defendant's right to appeal or the appellate record. On the contrary, the trial court appointed separate appellate counsel to protect Defendant's due process rights through the appellate process. This hardly demonstrates the trial court's ill will toward Defendant. Indeed, a reasonable person aware of these facts would not conclude that the presiding judge's impartiality might be questioned. *See Mayes*, 729 F2d at 607.

Defendant next asserts that the trial judge should have recused himself because he was former law partners with the father of Government witness Hammond, whom he allowed to give "perjurious testimony at the suppression hearing . . . on March 19, 2021 . . . [and] again on the 30 of June 2023." (Doc. 353 at 7). Defendant claims that he asked Hammond "if he knew the [judge], [and that] Officer Hammond replied, no." (*Id.*) The Government asserts that this claim is not a basis to recuse the trial judge because the suppression issue had been previously decided and it was Defendant, not the Government, who called Hammond as a trial witness. *See United States v. Bosch* 951 F.2d 1546, 1548 (9th Cir. 1991) (holding that there was no basis for a judge to recuse where the prosecutor was the judge's former law clerk). Indeed, a review of the Court docket shows that the trial court judge previously considered and ruled upon Defendant's prior Motion to recuse based on his purported relationship with Hammond. (Doc. 77, 78 and 81). In finding no basis to recuse, the trial court explained he interacted with Hammond when visiting his ill father, but had not otherwise seen Hammond in approximately 20 years. (Doc. 81 at 2). As required, the trial court properly evaluated whether his limited familiarity with Hammond would pose a conflict or create an appearance of bias. (*Id.*) Defendant does not assert new facts or changed circumstances to support these previously asserted claims. (*See* Doc. 77 at 2). Regardless, this Court finds "no reasonable person with knowledge of all these facts would conclude that the judge's impartiality might reasonably be questioned." *Mayes*, 729 F.2d at 607.

Defendant's last allegation is meritless because other than a bald assertion, Defendant offers no support for his claim that the trial judge fell asleep during the trial. Indeed, upon the Court's inquiry of this assertion, Defendant claimed the Government's counsel also noticed that the judge was asleep because he loudly shouted "your honor" to rouse him, which Government's counsel immediately and vehemently denied. Moreover, Defendant was unable to inform the Court when, in the trial, the alleged sleeping incident occurred. This is unusual since he claims it was so egregious. It seems unlikely that Defendant would not have immediately raised his observation upon becoming aware of it, immediately thereafter, or even at the close of trial. Therefore, the Court also finds this assertion untimely. *See United States v. Sibla*, 624 F.2d 864, 868 (9th Cir. 1980); *see also E. & J. Gallow Winery v. Gallo Cattel Co*, 967 F.2d 1280, 1295 (9th Cir. 1992) (stating that a party having information that raises a possible ground for disqualification may not wait until after an unfavorable judgement to bring the information to the judge's attention). Thus, the Court finds the fourth claim lacks sufficiency, credibility, and is untimely.

The Government asserts that "any reasonable person with knowledge of all the facts would not conclude that the Judge's impartiality might be questioned." (Doc. 362 at 7). The Court agrees. A review of the cited record, including various transcripts of proceedings reflects that the trial judge demonstrated professionalism and unlimited patience with Defendant. On this record, no reasonable person with "knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Mayes*, 729 F2d at 607.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Recuse and Disqualify Judge (Doc. 353) is **DENIED**.

Dated this 11th day of December, 2023.

Honorable Diane J. Humetewa
United States District Judge